Spalding, J.
The only question raised by the pleadings for our consideration, is this: Did Henry Wick, by his last "will and testament, dispose of his entire estate ?
If he did, there is an end to the case, for no one has doubted his right, under all the circumstances, to make a full testamentary disposition of his property.
If he did not, then, under the statute of “ descent and distribution,” the complainants, as the legal representatives of Matilda Bane, will take the one-eighth part of such intestate estate.
“ In the construction of wills,” says the learned Mr. Jarman, “ the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators.” Yet he continues, “ conjecture is not permitted to supply what the testator has failed to indicate; for, as the law has provided a definite successor, in the absence of disposition, it would be unjust to allow the right of this ascertained object to be superceded by the claim of any one not pointed out by the testator, with equal distinctness.”
With this chart before me, I will proceed to inquire wdiat class of persons is entitled to the residuum of Henry Wick’s estate; after satisfaction is made of all specific bequests and devises.
The obvious difficulty arises from the obscure meaning of the testator, as involved in the following paragraph, inserted towards the close of the will:
“ And I direct my executors to retain in their possession, all my bank and canal stock, and the land and town property, the use of which my wife has the use of, or so much as will be all-sufficient to pay all my debts, legacies and donations, and the balance to be divided equally among my children, then living.”
It is insisted with much force, and it has been urged -with great ability by counsel for demurrants, that the words, “ the *334 balance,” as here used, are equivalent to “ the residue of my estate,” and that they are sufficiently potent, in legal signification, to carry with them, to the six surviving sons of the testator, a large mass of property, real and personal, not otherwise disposed of in the will.
It is not claimed that a different construction, and one which would admit the five infant grand-children of the testator to participate, to some extent, in the residuary estate, would run counter to his own practice while living, or, in the least degree, do violence to the course of the testator’s natural affections.
But it is insisted that the testator designed, by this instrument, to dispose of his whole estate, and therefore, the residuary clause may, and should be taken in its largest sense, so as to exclude the whole.
This reasoning I believe to be predicated upon good law, but in looking through the will of Henry Wick I no where find his declared purpose to make disposition of his whole remaining property by that instrument.
He does, indeed, say, in the commencement, that he appoints his sons, Henry, Hugh, and John, his executors, “ to settle his estate.” This is very far, however, from evincing a disposition to take all his property out of the course of. statutory descent and distribution. Suppose with the same commencement, and after carving out a life support and maintenance for his wife, the testator had said, “ the balance of my estate I leave to my heirs at law,” would it have been any thing other than a settlement of his estate, if the executors had found it in the line of their duty to pay over to the infant children of Thomas L. Wick, the share to which he would have been entitled ? and to these complainants the share to which their mother, Matilda Bane, would have been entitled, if living ? I think not.
It is true, “ a court of equity is never disposed to put such a construction upon a will as would be likely to lead to an intestacy.” But, where the testator has wholly failed to give his meaning, or any clue to the same, and the residuary *335 clause will admit of more than one construction, a court of equity will be expected to adopt that which will affect the least injuriously, the heir at law.
It is said, that “ very special words are required to confine a. gift of a residue to a limited operation,” and counsel for demur-rants call the attention of the court, in a particular manner, to the ease of Boys v. Morgan, 2 Mylne & Craig 661, which settled, in the English chancery, the construction of a will in which the residuary clause was as follows :
“ I guess there will be found sufficient in my banker’s hands to defray and discharge my debts, which I hereby desire Mrs. Eliza Morgan to do, and keep the residue for her own use and pleasure.”
The question was, says the learned counsel who cites the case in argument, whether this residuary clause was to be confined to the particular fund in the hands of his banker, or extended ,to the whole balance of his estate; and the court held the latter to be the true construction of the will.
I have looked into this case, and see no. cause to find fault with the decision.
In point of fact, John Boys had by repeated donations, while living, transferred to Eliza Morgan, the bulk of his property, consisting of stocks in the English funds. The bill was filed by his administrator and next of kin, to have these transfers of stock declared fraudulent. Mrs. Morgan, in the meantime, established, in the prerogative court, the validity of an instrument called a will.
This was simply a recital, by John Boys, of his munificent gifts to Mrs. Morgan, and specified that it was given by him as “ a voucher of the truth, that none might question or trouble her,” and concluded with a provision for the payment of his debts, from moneys in the hands of his banker, with the residuary clause as already stated.
The Lord Chancellor, in deciding the case, takes occasion to remark, that, “ in considering what he (the testator) meant by the word “ residue,” it is extremely important to see what, *336 on the face of his will, he shows to have been his view of the interest which this person was to take in his property. He supposed she had got the whole, or nearly the whole of it. Me had actually transferred to her his funded property, etc.
We have nothing of this kind to aid us in giving an interpretation to the doubtful testament of Henry Wick.
In looking through the will, however, I find that the testator, after setting apart a sufficient amount of property, real and personal, for the use of his wife, attaches to the devise the following somewhat'significant language: “ but at her death or marriage, my executors will take possession of said property, and dispose of it as hereinafter directed."
After devising to his children, the lands and town lots that he had leased 'to them, respectively, at a nominal rent, taking care to make the representatives of his deceased son, in all respects equal to. one of his surviving children, so far as it regarded previous advancements, he provides a fund of a permanent character, consisting of canal and bank stock, and the lands and town property appropriated to the use of his wife, for the payment of debts, legacies, and donations, and directs his executors to retain in their possession, all, or as much as will be sufficient to pay them, and the balance to divide equally among his children, then living. He then adds a clause which would seem to indicate' that the property assigned to the use of his wife should remain intact, as it regards the payment of debts, although it continues subject to a division among the surviving children at the termination of her estate — “ and if there should not be property, of canal and bank stock, to pay all claims, I wish my executors to retain in their hands as much of other debts due me as will pay all.”
Upon a critical examination of this will, although our minds are by no means free from doubt in regard to the interest of the testator, the court feel constrained to limit the operation of the words “ the balance,” so as to reach nothing more than the particular fund with which they stand in immediate connection, to wit, the bank and canal stock, and *337 the lands and town property, the use of which had been given to the wife of the testator. This fund, after being charged with all the “ debts, legacies, and donations,” will yield the only “ balance” to be distributed exclusively to the six living children.
The general residuum of the estate will be distributed among the eight children of the testator, and their legal representatives, share and share alike — the three children of Thomas L. Wick, deceased, taking the one-eighth part, in right of their father, and the complainants, children of Matilda Bane, deceased, taking the one-eighth part, in right of their mother.

Demurrer overruled.